**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ERIC NEWMAN and NESTOR PATAGUE, | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) CIVIL NO. 12-10712-PBS |
|  | ) |
| ADVANCED TECHNOLOGY INNOVATION CORP., | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

**MEMORANDUM AND ORDER**

December 27, 2012

Saris, U.S.D.J.

**I. INTRODUCTION**

Plaintiffs, Eric Newman and Nestor Patague, allege that Defendant, Advanced Technology Innovation Corp. ("ATI") failed to pay them overtime compensation of one and a half times their regular rates of pay in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. Currently before the Court are cross-motions for summary judgment that turn on a single question: did Defendant properly exclude "per diem" payments in calculating overtime compensation. After a hearing and supplemental briefing, Plaintiffs' Motion for Partial Summary Judgment on Liability (Docket No. 35) is **DENIED** and Defendant's Motion for Summary Judgment (Docket No. 34) is **ALLOWED**.

1

## II.  UNDISPUTED FACTS

Plaintiffs Newman and Patague are electrical design engineers. Defendant ATI is a national recruiting firm. In early 2010, ATI recruited Newman and Patague for positions at General Dynamics Land Services, located in Woodbridge, Virginia. Both Plaintiffs lived more than sixty miles from Woodbridge, Virginia. Each Plaintiff signed a "Consulting Agreement" with ATI, as well as an "Offer Letter" confirming acceptance of the agreement's terms. Both agreements specified an hourly wage, as well as an overtime rate equal to more than one and a half times the specified hourly wage. Newman's Consulting Agreement set his hourly wage at $35.32 per hour and his overtime rate at $60.00 per hour. Patague's Consulting Agreement set his hourly wage at $42.37 and his overtime rate at $63.56.

ATI provided each Plaintiff with a "Consultant Per Diem Certification," which each Plaintiff signed, requesting "to be reimbursed for any business expenses on a per diem basis... using the Federal Travel Regulations per diem rates." At the time, the Internal Revenue Service ("IRS") set the Federal Travel Reimbursement rate for Woodbridge, Virginia at $141 per day. Likewise, both Plaintiffs' Consulting Agreements designated a "per diem" amount of $141 per day. Newman's agreement capped his weekly per diem at $987 for seven days, whereas Patague's

agreement capped his weekly per diem at $705 for five days.[1] Newman had previously worked for ATI and received a per diem under a substantially similar agreement.[2] During the course of Plaintiffs' employment, each Plaintiff received his agreed-upon maximum per diem whenever he worked at least forty hours per week.[3] However, each Plaintiff received a reduced per diem whenever he worked fewer than forty hours per week.[4]

### III.  DISCUSSION

#### A.   Standard of Review

---

[1] Defense counsel explained during oral arguments that it capped Newman's per diem at seven days, rather than five days, per week because Newman negotiated to receive per diem during weekends. The terms of the contract state that Newman will receive payment for seven days if he actually works Saturday, Sunday or the workday immediately preceding the weekend. Gallitano Aff. Ex. 3.

[2] ATI previously employed Newman under a Consulting Agreement dated October 7, 2008, which specified a regular rate of $37.00 per hour, an overtime rate of $65.00 per hour and "$160.00 per diem per day based on seven days, not to exceed $1,120.00 per week."

[3] ATI employed Newman from May 2010 until July 2011.  ATI paid Newman a per diem of $987 for at least fifty-one weeks of his employment. ATI employed Patague from November 2010 until April 2011. ATI paid Patague a per diem of $705 for at least eighteen weeks of his employment.

[4] The following chart displays data for the weeks in which Plaintiffs received a reduced per diem:

| NEWMAN | | | PATAGUE | | |
|---|---|---|---|---|---|
| Week Ending | Hours | Per Diem | Week Ending | Hours | Per Diem |
| 09/19/2010 | 35.0 | $ 862.92 | 12/05/2010 | 36.0 | $ 634.50 |
| 11/28/2010 | 38.5 | $ 950.34 | 12/26/2010 | 35.0 | $ 616.17 |
| 12/26/2010 | 35.0 | $ 862.92 | 01/02/2011 | 4.0 | $  70.50 |
| 01/02/2011 |  4.0 | $  98.70 | | | |
| 01/30/2011 | 31.5 | $ 778.32 | | | |
| 03/20/2011 | 36.0 | $ 888.30 | | | |
| 06/05/2011 | 36.5 | $ 900.99 | | | |
| 07/10/2011 | 31.0 | $ 764.22 | | | |

3

Summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 36-37 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). The court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." Id. at 36.

To succeed on a motion for summary judgment, "the moving party must show that there is an absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990). If the movant satisfies this burden, the burden shifts to the non-moving party, to produce "sufficient evidence . . . for a jury to return a verdict" in his favor. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 143 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

**B.   Prorated Per Diem Payments**

The FLSA guarantees qualified employees overtime payments at a rate of one and a half times the employee's "regular rate" of pay. 29 U.S.C. § 207(a)(1). The FLSA defines "regular rate" as excluding "reasonable payments" made to reimburse employees for certain work-related expenses. 29 U.S.C. § 207(e)(2). Regulations

promulgated by the DOL thrice specify that such reimbursement payments are excludable so long as they "reasonably approximate" the employee's work-related expenses. 29 C.F.R. § 778.216(a), (b)(3), (c).

The DOL's Field Operations Handbook ("Handbook") states as follows:

> Situations may be encountered where the employer makes per diem or other subsistence payments, or pays an allowance to offset the additional expenses incurred by an employee because he is required to work at a distant or isolated location and must live away from home. Such payments may be excluded from the regular rate of pay to the extent that they do not exceed a reasonable approximation of actual additional expenses involved in such situations.

Dep't of Labor, Field Operations Handbook, § 32d05a(b) (2000). Moreover, the Handbook permits an employer to make "proportionate" per diem payments when an employee works at a remote location for only a partial day:

> If the amount of per diem or other subsistence payment is based upon and thus varies with the number of hours worked per day or week, such payments are a part of the regular rate in their entirely [sic]. However, this does not preclude an employer from making proportionate payments for that part of a day that the employee is required to be away from home on the employer's business. For example, if an employee returns to his home or employer's place of business at noon, the payment of only one-half the established per diem rate for that particular day would not thereby be considered payment for hours worked and could thus be excluded from the regular rate.

Id. § 32d05a(c). Although the Handbook is not legally binding, the Handbook can supply persuasive guidance. See

5

Fast v. Applebee's Int'l, Inc., 638 F.3d 872, 881 (8th Cir. 2011) (upholding the District Court's deference to the Handbook's interpretations); Gagnon v. United Technisource, Inc., 607 F.3d 1036, 1041 n.6 (5th Cir. 2010) (considering the Handbook's "persuasive effect"); Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1255 (11th Cir. 2001) (finding the Handbook "persuasive"); Reich v. Miss Paula's Day Care Ctr., Inc., 37 F.3d 1191, 1194 (6th Cir. 1994) (accepting the Handbook's guidance because the DOL is "the primary federal authority entrusted with determining the FLSA's scope"); see also Lapine v. Wellesley, 304 F.3d 90, 106 (1st Cir. 2002) (adopting as persuasive the reasoning of the DOL's Veterans' Reemployment Rights Handbook and noting that "[w]hile not controlling upon the courts, the DOL's views are entitled to some consideration").

ATI argues that it utilized a mathematical method to prorate per diem payments that "reasonably approximated" reimbursable expenses. Anthony Calisi, the Chairman and Treasurer of ATI, explains that ATI determined Plaintiffs' per diem by multiplying the "fractional number of days worked" (rounded to the nearest hundredth) by the "per diem reimbursement rate of $141."[5] Calisi Aff. ¶¶ 4-5. With

---

[5] ATI provided the following chart demonstrating the application of its proration formula, which differs for Newman and Patague in accordance with the terms of their respective Consulting Agreements.

6

respect to Newman, the formula does not, in fact, measure the "fractional number of days worked" because ATI agreed to pay him up to seven days of per diem so long as he worked on the weekends or the preceding work day. As such, if Newman worked on the weekend or a workday preceding the weekend, he received a per diem for those weekend days.  At oral argument, Plaintiffs' attorney suggested that Newman did not stay in Woodbridge over the weekend, even when he worked forty hours a week. There was no evidence on the record demonstrating Newman left Woodbridge on the weekend or that ATI knew he did not stay over. No arguments were made at hearing or in briefs to suggest the seven day agreement did not approximate work-related expenses to the extent he stayed over the weekend.

---

| ERIC NEWMAN ||
| Week Ending | Fractional Number of Days Worked x Per Diem Reimbursement |
|---|---|
| 09/19/2010 | [(35.0 ÷ 40) x 7] = 6.12 x $141 = $862.92 |
| 11/28/2010 | [(38.5 ÷ 40) x 7] = 6.74 x $141 = $950.34 |
| 12/26/2010 | [(35.0 ÷ 40) x 7] = 6.12 x $141 = $862.92 |
| 01/02/2011 | [( 4.0 ÷ 40) x 7] = 0.70 x $141 = $ 98.70 |
| 01/30/2011 | [(31.5 ÷ 40) x 7] = 5.52 x $141 = $778.32 |
| 03/20/2011 | [(36.0 ÷ 40) x 7] = 6.30 x $141 = $888.30 |
| 06/05/2011 | [(36.5 ÷ 40) x 7] = 6.39 x $141 = $900.99 |
| 07/10/2011 | [(31.0 ÷ 40) x 7] = 5.42 x $141 = $764.22 |
| NESTOR PATAGUE ||
| Week Ending | Fractional Number of Days Worked x Per Diem Reimbursement |
| 12/05/2010 | [(36 ÷ 40) x 5] = 4.50 x $141 = $634.50 |
| 12/26/2010 | [(35 ÷ 40) x 5] = 4.37 x $141 = $616.17 |
| 12/26/2010 | [( 4 ÷ 40) x 5] = 0.50 x $141 = $ 70.50 |

7

ATI argues its method for approximating the work-related per diem expenses incurred by an employee who works a partial day at a remote location is permitted by the Handbook. The per diem rate of $141 is set by IRS regulations and in ATI's view, there is no evidence it did not fairly approximate per diem expenses.

Nevertheless, Plaintiffs contend that even if ATI can legally prorate Plaintiffs' per diem, ATI's method of proration was unreasonable because Plaintiffs' "per diem" was really an hourly wage dressed in per diem clothing. Specifically, Plaintiffs assert that "Defendant created a scheme to avoid paying the correct overtime rate which should have been based on a $60.00 per hour regular rate of pay." Pls.' Mem. Opp'n 6, Oct. 5, 2012, ECF No. 44; Pls.' Mem. Supp. 6, Sept. 21, 2012, ECF No. 36. An employer cannot "avoid paying [the employee] a higher 'regular rate' by artificially designating a portion of [the employee's] wages as 'straight time' and a portion as 'per diem.'" Gagnon v. United Technisource, Inc., 607 F.3d 1036, 1041 (5th Cir. 2010).

To prove that ATI artificially lowered Plaintiffs' regular rate of pay, Plaintiffs rely on the "coincidence" that each Plaintiffs' "hourly" per diem plus his hourly wage roughly equaled $60. In support of this theory, Newman

8

testified at his deposition that ATI initially promised him an hourly wage of $60.[6] Newman testified as follows:

> Q.  ... When is it that you say you and Mr. Fuentes first discussed what your base hourly rate would be for the General Dynamics assignment?
> A.  When he first called me.
> Q.  And what exactly did he say to you about what the base rate would be?
> A.  He told me the base rate is $60 per hour.

However, Newman's deposition testimony does not create a dispute of material fact. Even if ATI verbally promised him $60 per hour, it is undisputed that each Plaintiff subsequently agreed in writing to a regular hourly wage of less than $60. The mathematical calculation provided in the Calisi affidavit disapproves Plaintiffs' contention that the per diem was calculated simply by multiplying the number of hours worked in a week by $24.68 for Newman and $17.63 for Patague to ensure a $60 an hour rate. Indeed, Plaintiffs' proposed calculation only arrives at the actual payment amount on certain weeks and leads to an incorrect calculation on other weeks. Therefore, ATI properly paid Plaintiffs' overtime based upon the hourly rates to which they agreed in the contract, and paid per diem rates provided in the federal travel regulations that reasonably approximated work-related expenses.

---

[6] Although both parties reference allegations by Patague that he was similarly promised $60 per hour, neither party has submitted deposition testimony in which Patague explicitly make these allegations.

Additionally, although Gagnon provides that an employer cannot artificially lower an employee's regular rate of pay, the facts of Gagnon are distinguishable from the instant case in the following three ways. First, unlike the contract in Gagnon, the Plaintiffs' Consulting Agreements provided a per diem that depended on the number of days worked, not the number of hours worked. See id. at 1039, 1041 n.7. Second, the instant case lacks the plethora of suspicious circumstances attendant to the employer's behavior in Gagnon.[7] See id. at 1041-42. Third, unlike the employer in Gagnon, ATI has provided ample evidence that Plaintiffs' per diem "reasonably approximated" their reimbursable expenses. See id. at 1039, 1041 n.7.

### IV.   ORDER

The Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment on Liability and **ALLOWS** Defendant's Motion for Summary Judgment.

                                    /s/ PATTI B. SARIS
                                    PATTI B. SARIS
                                    United States District Judge

---

[7] In Gagnon, the Fifth Circuit noted four suspicious circumstances. First, the employee's "straight time" rate was close to the minimum wage and approximately one third of "the prevailing wage for similarly skilled craftsmen." Gagnon, 607 F.3d at 1041.  Second, "the combined 'straight time' and 'per diem' hourly rates" approximated the prevailing wage for similarly skilled workers.  Id.  Third, the employee received a "raise in pay" that was effectuated by raising his "per diem" rate while leaving his "straight time" rate unchanged.  Id.  Fourth, the employer failed to proffer a legitimate reason why the employee's per diem rate varied according to the number of hours he worked.  Id. at 1041-42.

10